**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**In Re: The Adoption of M.C.**
**No. 22-0131** (Upshur County No. 21-A-18)

**MEMORANDUM DECISION**

Petitioner J.C.[1] is the biological father of minor child M.C. Respondent D.C. is the child's mother, and respondent T.C. is the mother's husband. By order entered on February 1, 2022, the Circuit Court of Upshur County entered an order allowing T.C. to adopt the child. Petitioner appeals that order.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

On September 21, 2021, the mother and her husband filed a petition for adoption in the circuit court claiming that petitioner had abandoned the child and seeking to allow the husband to adopt the child. Petitioner contested the adoption. The evidence presented to the circuit court showed that the child was born in 2017 and that petitioner and the mother resided together until they separated approximately seven months later. Following their separation, petitioner and the mother communicated solely through Facebook Messenger regarding the child. For brief periods of time, the mother either blocked petitioner's messages or did not answer them. However, the mother indicated that she exchanged seventeen messages with petitioner in 2019 regarding the child, but only four messages in 2020 regarding the child. During 2019 and 2020, petitioner visited with the child approximately ten times. Petitioner sent the last message seeking visitation with the child on September 5, 2019. The last message petitioner sent to the mother at all was on July 20, 2020. No communications of any kind were exchanged between the mother and petitioner thereafter. When respondents filed their petition for adoption on September 21, 2021, it had been more than two years since petitioner had last asked to visit with the child. In his testimony before the circuit court, petitioner admitted that he did not "do anything else to try to get ahold of (the mother) or anything of that nature" after July 20, 2020.

The evidence of record indicates that, after petitioner's last contact on July 20, 2020, the mother did nothing to prevent him from contacting the child. She never directed petitioner to cease messaging her and never secreted the child away from him. Petitioner knew where the child lived

---

[1] Because this case involves children and sensitive matters, we follow our practice of using initials to refer to the children and the parties. *See* W. Va. R. App. P. 40(e).

[2] Petitioner is represented by Jared S. Frame, and respondents are represented by Daya Masada Wright.

and had seen the child in the front yard of the mother's home when he drove by. Also, after July 20, 2020, petitioner made no phone calls and sent no letters, cards, e-mails, or any other forms of communication to the mother or the child. There was no evidence petitioner was financially or physically unable to visit the child, or that he was prevented from visiting the child. Petitioner never paid any financial support to the mother for the child nor did he seek relief from a family court to compel the mother to allow him visitation.

Below, petitioner testified that the mother's husband played an important part in his child's life and that he did not want to take that away from the child. He stated that he merely wanted the opportunity to share in his child's life, to teach the child, to enjoy the outdoors with the child, and to take the child hunting.

In its February 1, 2022, order, the circuit court found as follows: Petitioner last had contact with the child on July 5, 2019; petitioner had failed to assert his parental rights for over two years before respondents filed the petition for adoption; petitioner did not support the child within his means; petitioner provided no gifts or monies to the child after 2019; and petitioner did not visit or otherwise communicate with the child even though he knew where the child resided, was physically and financially able to visit the child, and was not prevented from doing so for an uninterrupted period greater than six months immediately preceding the filing of the petition for adoption. Accordingly, the circuit court concluded petitioner had legally "abandoned" the child as defined by West Virginia Code § 48-22-306. The circuit court then granted respondents' petition, allowing the husband to adopt the child.

Petitioner now appeals and argues that the circuit court erred when it concluded that petitioner had abandoned the child. When asked to review a circuit court's order granting a petition for adoption following a finding of parental abandonment, we apply the following two-pronged deferential standard of review:

> We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*In re Adoption of H.G.*, 246 W. Va. 105, 110, 866 S.E.2d 170, 175 (2021) (quoting Syl. Pt. 2, *Walker v. W. Va. Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997)).

West Virginia Code § 48-22-306(a) establishes a legal presumption for abandonment:

> (a) Abandonment of a child over the age of six months shall be presumed when the birth parent:

> (1) Fails to financially support the child within the means of the birth parent; and

> (2) Fails to visit or otherwise communicate with the child when he or she knows where the child resides, is physically and financially able to do so and is not prevented from doing so by the person or authorized agency having the care or

2

custody of the child: Provided, That such failure to act continues uninterrupted for a period of six months immediately preceding the filing of the adoption petition.

West Virginia Code § 48-22-306(d) goes on to provide that a "birth parent shall have the opportunity to demonstrate to the court the existence of compelling circumstances preventing said parent from supporting, visiting or otherwise communicating with the child[.]"

Petitioner makes two arguments on appeal. First, petitioner contends that he provided support for the child "within his means." Petitioner argues that despite being mostly unemployed between April of 2018 and the Summer of 2021, he bought "multiple things" for the child and at least one gift was delivered to the child's maternal grandmother, while others were still in his possession as he never had a chance to give them to the child's mother. Petitioner acknowledges, however, that he never paid any direct financial support to the mother for the child's expenses and that holding gifts in his own possession does nothing to benefit the child. On this record we find no error in the circuit court's determination that petitioner failed to financially support the child within his means.

Petitioner next argues, without support or explanation, that the mother prevented him from visiting the child. Petitioner asserts that, if he could do it over, he would file an action in family court to establish a parenting plan. However, he claims he just did not have the money to bring an action, he did not understand the process, and he did not want to cause strife. The record, however, belies petitioner's argument as petitioner admits that, in the spring of 2018, he obtained a packet containing forms to file a pro se family court petition to allocate custodial responsibility. Moreover, in the six months before respondents filed their adoption petition, petitioner knew where the child resided, was physically and financially able to visit the child, was not prevented from doing so, and yet he never visited the child. On this record, we find no error in the circuit court's determination that petitioner abandoned the child. Accordingly, we affirm the order granting the respondents' petition for adoption.

Affirmed.

**ISSUED:** May 2, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn